IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NICHOLAS NAPADANO; :
ALAMIN ABDUL JABBAR; and :
HECTOR VEAL, :
: CIVIL ACTION
Plaintiffs, :
:
v. : No.
:
REICH INSTALLATION SERVICES, INC. :
a Wisconsin corporation, : **JURY TRIAL DEMANDED**
:
Defendant. :
:

## COMPLAINT

Nicholas Napadano, Alamin Abdul Jabbar and Hector Veal, (*hereinafter* referred to collectively as "Plaintiffs," unless indicated otherwise), by and through their undersigned counsel, hereby aver as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiffs against Defendant Reich Installation Services Inc. for violations of 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964 ("Title VII") as set forth *herein*.[1] Plaintiffs assert, *inter alia*, that they were unlawfully discriminated against, retaliated against, subject to a hostile work environment and terminated from their employment in violation of federal law. As a direct consequence of Defendant's unlawful actions, Plaintiffs seek damages as set forth herein.

---

[1] Plaintiffs Jabbar & Veal are solely proceeding *herein* under Section 1981. However, each have pursued claims through the Equal Employment Opportunity Commissions ("EEOC") and will move to amend the instant suit to include their mirroring Title VII claims once same are properly administratively exhausted.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress of such federal statutes. There would separately lie jurisdiction under § 1332, as there is complete diversity of Parties.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this State and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, in addition, venue is properly laid in this district because Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the District of Delaware for this action.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiffs are adult individuals. Nicholas Napadano's address is 120 E. Street Rd., Apt. J3-06, Warminster, Pennsylvania 18974. Alamin Abdul Jabbar's address is 462 N. 51st Street, Philadelphia, Pennsylvania 19139. Hector Veal's address is 8 Brooking Court, Suite 102, Lutherville, Maryland 21093.

7. Reich Installation Services, Inc. (hereinafter, "Defendant") is a Wisconsin corporation. Defendant provides services nationally to companies all over the United States and is doing business in the State of Delaware. Defendant primarily installs custom, automated equipment and systems in large corporations such as Walmart, Supervalu, BMW, IKEA, FedEx, and other similar commercial entities. Defendant's Delaware registered agent for service of process is Business Filings Incorporated with a registered address of 108 West 13th Street, Wilmington, Delaware 19801.

8. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff Napadano is a Caucasian male.

11. Plaintiff Jabbar is a black (African American) male.

12. Plaintiff Veal is a black (African American) male and also of Hispanic descent.

13. Defendant is a company that is hired by third-party businesses to install very comprehensive electronic, conveyer and other systems throughout physical complexes and warehouses. Such projects are not short term and can span months to a year depending upon complexity.

14. Within the Northeastern United States, Defendant was operating and overseeing several very significant commercial and long-term installation / construction projects. One such project was taking place in New Castle, Delaware ("the DE project").

15. Each of the three (3) Plaintiffs were placed to work on Defendant's DE project through an entity named "Tradesman International" ("TI"), which is a placement/recruitment/staffing agency.

16. Plaintiff Napadano was hired to work for Defendant at its DE Project as an "Installer," on or about May 24, 2021; Plaintiff Jabbar was hired to work for Defendant at its DE Project as an "Installer," mid to late May of 2021; and Plaintiff Veal was hired to work for Defendant at its DE Project as an "Installer," in or about June of 2021.

17. Though Plaintiffs were introduced to Defendant via a staffing agency, Defendant was for all legal purposes, Plaintiffs' employer, as:

   a. Defendant dictated Plaintiffs' work schedules;
   b. Defendant directly supervised Plaintiffs, and exerted significant control over the manner in which they performed their day to day work assignments;
   c. Defendant provided all job supplies & equipment required of the job;
   d. Defendant provided all rules and safety instructions governing work on the job site;
   e. Defendant identified what job site(s) Plaintiffs (and all workers on their job sites) would be assigned to;
   f. Plaintiffs were obligated to report any call outs to Defendant; and
   g. Defendant monitored discipline and performance of all Plaintiffs.

18. All Plaintiffs were led to believe that their respective periods of employment were: (a) long-term; and (b) they could move from state-to-state with continued employment on new and continuing projects.

19. Based on the promised continuity of the job, each of the three (3) Plaintiffs were traveling from out of state to work for Defendant in Delaware.

20. All three (3) Plaintiffs are very hard workers and expected that they would work in a collegial and labor-intensive (but generally fair) work environment. But instead, Plaintiffs were subjected a very discriminatory work environment because they were not Hispanic and/or did not speak Spanish.

21. In particular:

   i. Defendant let a Hispanic employee named Alex Guerro ("Alex") as Project Manager manage the work environment and give all necessary directives;

   ii. Nearly the entire workforce of Defendant was Hispanic (with the workforce being at least 50-75 people at any given time). There was almost no non-Hispanic representation in the workforce; and

   iii. Alex held daily meetings and only communicated to the workforce in Spanish, and primarily only spoke Spanish during any meetings. Plaintiffs could barely understand what was expected of them at times, nor could they understand protocols or safety instructions being given by Alex. Non-Hispanic employees were entirely disregarded.

   iv. Hispanic employees were given complete flexibility while non-Hispanic employees (including the Plaintiffs) were held to different standards; this included solely by of example replenishing supplies quickly for Hispanic crews while the non-Hispanic workers had to wait longer periods of time, which delayed the progress of work;

19. While working for Defendant at the DE project, there was nothing short of an exceptionally racist culture and work environment. More specifically:

   i. Hispanic employees laughed around Plaintiffs, as at times encouraged by Alex;

   ii. Alex repeatedly referred to Plaintiff Napadano as "Gringo," though he was emphatic his name was "Nick";

   iii. Alex referred to Plaintiff Jabbar openly as a "nigger," and in particular stating: "come on nigger" in the middle of a job assignment;

   iv. Hispanic employees used the word "Moreno" as a derogatory reference to at least one of the Plaintiffs in this case (Veal), which behavior was condoned;

5

    v. Alex was really nasty to Plaintiffs, short, and made it clear he did not want them around. Alex also at times compared Plaintiffs to Hispanic employees telling them "his people work harder";

    vi. Derogatory comments were made about non-Hispanics in Spanish, including by Alex (and other Hispanic employees, as the culture was perpetuated); and

    vii. Alex also refused to translate in English discussions he was having at meetings or in the workplace, literally laughing or walking away when non-Hispanic employees such as Plaintiffs requested translation or information.

20. <u>Each</u> Plaintiff complained of discrimination in the workplace, and experienced almost immediate retaliation as follows:

    i. Plaintiff Napadano approached Alex on or about June 5, 2021 after a safety meeting that was conducted in Spanish; Plaintiff Napadano approached Alex and requested English translation (as one of the only Caucasian employees in the facility), and Alex told him not to worry about it. As his safety was very important, Plaintiff Napadano told Alex: "I feel the way you treat Hispanic or Mexican employees better and give safety instructions to them is completely unfair." Within 2 business days, Plaintiff Napadano was terminated for supposedly being on his phone. However, his phone was in his personal vehicle; and when he expressed opposition to such a fabricated excuse, he was told by Alex: "I don't care about a reason, you are fired anyway."

    ii. Immediately after being referred to as a "nigger," Plaintiff Jabbar quite vocally objected to this racist behavior directly to Alex, and stated: "don't you ever call me a nigger" and complained to Alex that he is racist toward anyone who is not Spanish; Defendant had refused to pay Plaintiff Jabbar for the near entire five (5) weeks that he worked on their job site. Every time Plaintiff Jabbar approached Alex about getting paid, he was told 4-5 times he should "just quit" as he's probably not ever going to get paid. Plaintiff Jabbar thereafter was forced to quit/was constructively discharged as he was not getting paid and could not even afford to continue traveling to Defendant's job site.

    iii. Plaintiff Veal confronted Alex about his mistreatment of non-Hispanic workers, and Alex brushed him off and said he did not want to "deal with it"; shortly thereafter, Plaintiff Veal was told there was no additional work for him to perform and they were bringing in workers from New Jersey.

21. After Plaintiffs were terminated, upon information and belief, Defendant hired additional Hispanic employees as their replacements (and were regularly bringing in new Hispanic

workers during the course of Plaintiffs' tenure, via van loads and upon information and belief were employing non-documented workers).

22. In addition to the above, Alex continually used racial language such as calling black people "miete" (which means "shit" in Spanish) and white people Gringos. However, he used *actual names* when referring to Hispanic employees.

23. Plaintiffs were all terminated while working for Defendant in Delaware for racist and retaliatory reasons, after being subject to a hostile work environment for the duration of their respective periods of employment.

24. Anyone in the workplace of Defendant who was not Hispanic generally experienced very substantial discrimination. And Defendant, in the interest of cheap labor and continuity of work performance, recklessly failed to protect or prevent discrimination against non-Hispanics.

### Count I
### Violations of 42 U.S.C. § 1981
### (Discrimination, Hostile Work Environment, and Retaliation)
### (Brought by all Plaintiffs)

30. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

31. Plaintiffs were terminated because of their race, national origin, and complaints of racial discrimination.

32. These actions as aforesaid (in addition to creating a hostile work environment), constitute violations of 42 U.S.C. § 1981.

**Count II**
**<u>Title VII of the Civil Rights Act of 1964 ("Title VII")</u>**
**(Discrimination and Retaliation)**
**(By Plaintiff Napadano only)**

33. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

34. Plaintiff Napadano was terminated because of his race, national origin, and due to his complaints of racial discrimination.

35. These actions as aforesaid (in addition to creating a hostile work environment), constitute violations of Title VII.

**WHEREFORE**, Plaintiffs pray that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiffs, reimburse Plaintiffs, and make Plaintiffs whole for any and all pay and benefits Plaintiffs would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiffs are to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiffs are to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiffs are to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E. Plaintiffs are to be given a jury trial as demanded in the caption of this Complaint.

**LAROSA & ASSOCIATES LLC**
JOHN M. LAROSA, ESQ.
*/s/ John M. LaRosa*
Delaware Bar ID No. 4275
1225 King Street, Suite 802
Wilmington, DE 19801-3246
(302) 888-1290
(302) 655-9329 (fax)
JLR@LaRosaLaw.com

**KARPF, KARPF & CERUTTI, P.C.**
CHRISTINE E. BURKE, ESQ.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801
cburke@karpf-law.com

*Pro Hac Vice* Motion Pending

*Attorneys for Plaintiff*

Dated: November 22, 2021

9